**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

**JARAD BONIN**                                      **CIVIL NO.: 6:17-CV-00637**

**VERSUS**                                            **JUDGE DOHERTY**

**LOUIS ACKAL, individually and**          **MAGISTRATE JUDGE WHITEHURST**
**in his official capacity as the Sheriff**
**of the Iberia Parish Sheriff's Office,**
**ET AL**

---

**AMENDED COMPLAINT FOR DAMAGES**

---

TO THE HONORABLE, THE UNITED STATES DISTRICT COURT IN AND FOR THE WESTERN DISTRICT OF LOUISIANA, LAFAYETTE-OPELOUSAS DIVISION:

**INTRODUCTION**

This is an action for money damages brought pursuant to 42 U.S.C. '' 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under the laws of Louisiana against Louis Ackal, individually and in his official capacity as the Sheriff of the New Iberia Sheriff's Office, Officer Jane Doe of the Iberia Parish Sheriff's Office, and the City of New Iberia.

Complainant now filed the present Amended Complaint for Damages to add additional facts in furtherance of the allegations against Defendants outlined in their Original Complaint.

**ADDITIONAL FACTS**

51.

Complainant re-alleges and re-avers all allegations contained in paragraphs 1-50 of his original Complaint for Damages, filed on May 13, 2017, and further alleges additional facts as follows:

1

52.

Sheriff Louis Ackal ("Sheriff Ackal") was duly-elected as Sheriff for the Parish of Iberia in 2008. The custom of the City of New Iberia is to enter into a contract with Sheriff Ackal and the Iberia Parish Sheriff's Office ("IPSO") to retain their law enforcement services, including operation of the Iberia Parish Jail.

53.

Between the date of the aforesaid 2008 election and the date of incident alleged in this suit, May 14, 2016, at all times, Sheriff Ackal (and IPSO) were contracted with the City of New Iberia.

54.

Between the date of the aforesaid 2008 election and the date of incident alleged in this suit, May 14, 2016, a significantly high number of constitutional and civil rights violations occurred on a regular basis between IPSO and the citizens of New Iberia that ultimately resulted in a federal criminal investigation and nearly a dozen IPSO deputies pleading guilty to a cavalcade of crimes in early 2016, before the incident that forms the basis of this lawsuit. Said federal investigation occurred over the course of several years and the City of New Iberia had actual and/or constructive knowledge of the contents of the investigation.

55.

The following incidents were either uncovered during the investigation and/or were public knowledge prior to the conclusion of the investigation, and does not constitute an exhaustive list:

A.    Anthony Daye was beaten by various IPSO deputies while he was an inmate at Iberia Parish Jail;

B.    Ricky Roche was targeted and beaten by various IPSO deputies after having a dispute at a bar with a different IPSO deputy;

C.    Ray Trosclair was targeted, beaten, and arrested by various IPSO deputies after a personal dispute with a relative of Sheriff Ackal;

2

D.      Marcus Robichaux was violently attacked by a police dog and was further beaten by an IPSO deputy at the Iberia Parish Jail while he was an inmate;

E.      Diane Carlson was battered during an illegal search of her residence;

F.      Whitney Lee was violently attacked by IPSO deputies while he was offering no resistance during a shakedown at Iberia Parish Jail;

G.      Victor White III was shot and killed by an IPSO deputy while handcuffed in the backseat of an IPSO deputy's vehicle;

H.      Jamaine Youman was attacked by a police dog and was further beaten by an IPSO deputy while he was surrendering and offering no resistance;

I.      Curtis Ozenne was violently beaten in the chapel of Iberia Parish Jail by various IPSO deputies;

J.      Scott Spears was violently beaten in the chapel of Iberia Parish Jail by various IPSO deputies;

K.      Michael Jones, a mentally ill man, died in jail after being beaten by IPSO deputies;

56.

Since Ackal took office in 2008, more than 30 civil lawsuits have been filed against IPSO in state and federal courts.  According to records provided by IPSO and the Louisiana Sheriffs' Association, which insures IPSO, the office has settled with at least 10 plaintiffs since 2008, with payments totaling nearly $1.1 million.

57.

At least six people, including five inmates, have died in IPSO custody since Ackal was elected into office.

58.

Despite those alarming statistics, and despite the federal investigation into IPSO that resulted in a staggering amount of guilty pleas, the City of New Iberia remained unfazed and continued to

retain the services of Ackal and IPSO up until May 14, 2016, the date of the subject incident, and continuing on thereafter.

59.

In fact, it was the policy of the City of New Iberia to delegate the policymaking and procedures of IPSO, including the use of force continuum, to Sheriff Ackal, despite the fact that the law explicitly states that said policymaking and procedures is the responsibility of the city itself. Furthermore, despite the rise in excessive force lawsuits and deaths, the City of New Iberia never chose to seize control over the policymaking and procedures of Sheriff Ackal, and continued to act deliberately indifferent to the persistent constitutional violations occurring within their city limits at all times relevant.

60.

Accordingly, prior to the occurrence of the incident that forms the basis of this suit in May 2016, it was the custom and practice of the City of New Iberia to retain and utilize the services of a Sheriff and sheriff's office that was well-known publicly for their custom and practice of committing civil rights and constitutional violations against its own citizens including, but not limited to, excessive force.

61.

In other words, (1) it was the policy, practice, and custom of Sheriff Ackal to deprive New Iberia citizens of their civil rights; (2) the City of New Iberia was aware of this policy, practice, and custom, and further condoned said policy, practice, and custom, or, alternatively, acted with deliberate indifference to the policy, practice, and custom; and (3) this policy, practice, and custom led directly to the damages claimed by Complainant in the present suit.

62.

At any time prior to the May 2016 incident, the City of New Iberia could have retained the services of any other entity for law enforcement purposes, but they willingly chose to continue the

4

retention of Sheriff Ackal and IPSO, despite the incredibly high amount of lawsuits, deaths, guilty pleas, and federal investigations. They further continued to delegate policymaking decisions regarding use of force to Sheriff Ackal, despite the aforesaid alarming rise of issues. Accordingly, this decision was a conscious act to adopt all policies, practices, and customs of Sheriff Ackal, including all those that were clear deprivations of civil and constitutional rights.

63.

Sheriff Ackal and IPSO, including the deputies, were comfortable in continuing to commit civil rights and constitutional rights violations against their citizens because they knew that there would be no consequences from the City of New Iberia and that their employment would continue regardless of the lawsuits, deaths, and criminal charges lobbied against them. This deliberate indifference from the City of New Iberia, through the mayor, condoned the acts and/or omissions of Ackal, IPSO, and IPSO deputies, and fostered a community of civil rights violators to freely act under color of law within their city limits.

64.

The mayor of New Iberia was responsible for retaining law enforcement and the hiring, training, supervision, discipline, and control of the law enforcement unit that he/she chose to retain, and thus complicitly adopted all policies, practices, and customs utilized by IPSO at all times relevant.

65.

The incident that forms the basis of this suit involves an IPSO deputy unlawfully subduing a non-resistant citizen (Plaintiff) and continuing to attack him even when he was on the ground, including tazing him until he lost control of his bladder. Said IPSO deputy then falsely claimed that Plaintiff was resisting arrest, yet all charges against Plaintiff were subsequently dismissed. This fact pattern falls directly in line with IPSO's policies, practices, and customs regarding excessive use of force and falsifying reports and mirrors several of the prior IPSO incidents outlined in detail above.

5

66.

Thus, the aforesaid incident would not have occurred and Plaintiff would not have suffered damages if the City of New Iberia and Sheriff Ackal/IPSO did not conspire to follow a persistent practice of depriving their own citizens of their civil and constitutional rights.

Respectfully submitted:

s/L. Clayton Burgess
**L. CLAYTON BURGESS (22979)**
Attorney for Plaintiff
L. Clayton Burgess, A P.L.C.
605 West Congress Street
Lafayette, Louisiana 70502-5250
Telephone:  (337) 234-7573
Facsimile:  (337) 233-3890
E-mail:  lcburgess@clayburgess.com

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing was electronically filed with the Clerk of Court and all parties through counsel of record using the CM/ECF system.  I also certify that a copy of the foregoing will be sent to all non-CM/ECF participants by United States Mail, properly addressed and postage prepaid.

Lafayette, Louisiana, this 2nd day of October, 2017.

/s/ L. Clayton Burgess
**L. CLAYTON BURGESS**

6