# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

JARAD BONIN                                    Civil Action No. 6:17-0637

versus                                                    Judge Unassigned

LOUIS ACKAL, ET AL.                Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is a Motion to Dismiss for Failure to State a Claim [Doc. 8] filed by the City of New Iberia ("the City"). Plaintiff Jarad Bonin filed an opposition to the original motion [Doc. 11], however, on the same date, the plaintiff moved to amend his complaint to clarify and supplement his claims [Doc. 10]. The undersigned granted the motion to amend [Doc. 12] and thereafter deferred ruling on the motion to dismiss, allowing the defendant an opportunity to amend or withdraw its motion following review of the Amended Complaint [Doc. 14]. On October 18, 2017, the defendant filed a Supplemental Memorandum [Doc. 19] in support of its motion to dismiss, arguing dismissal of the plaintiff's complaint remains appropriate.

For the reasons that follow, the undersigned agrees and recommends that the motion to dismiss be GRANTED, and that the plaintiff's §1983 claims against the City be DENIED AND DISMISSED WITH PREJUDICE.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of the lawsuit are as follows.  Plaintiff alleges that, on May 14, 2016, his wedding day, he was attacked by an Iberia Parish Sheriff's Office ("IPSO") deputy and was subdued and tazed on the ground, despite the fact that he was not resisting and posed no threat.  Plaintiff alleges he was arrested and charged with various crimes, including resisting arrest and battery of an officer, but that all charges were ultimately dismissed.

The plaintiff filed the instant lawsuit on May 13, 2017.  In a somewhat vague Complaint, the plaintiff asserted §1983 claims against Sheriff Louis Ackal, the City of New Iberia, and Deputy Jane Doe, as well as state law claims of assault and battery against Deputy Jane Doe.[1]  In its original motion to dismiss, the City argued that under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978), a municipality can be sued for a violation of civil rights only when the execution of a

---

[1] Although it is somewhat unclear to the Court what specific claims are alleged against which defendants, the plaintiff alleges the following with respect to the Sheriff and the City:

> As a result of their unlawful and unconstitutional conduct, defendants, Louis Ackal, in his official capacity as the duly-elected Sheriff of the Parish of Iberia; Jane Doe, individually and in her official as a Deputy Sheriff for the Parish of Iberia; and the City of New Iberia, jointly, individually and *in solido,* deprived plaintiff of his civil rights under 42 U.S.C. § 1983. Said defendants are liable, individually, jointly and *in solido,* unto plaintiff for such damages.

*See* plaintiff's Complaint, ¶47.  This paragraph was incorporated in the Amended Complaint filed on October 3, 2017.  Considering the foregoing, the undersigned concludes the plaintiff has pled a §1983 claim against the City.

2

government's policy or custom inflicts the injury for which the government as an entity is responsible. *See also Daniel v. City of Minden*, 2015 WL 9684959, *2 (W.D. La. 2015) ("A municipality such as Minden may be liable under Section 1983 only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation.").  In its original motion to dismiss, the City argued the plaintiff presented only bare-bones, conclusory allegations that, "despite the patterns and practices" of Sheriff Ackal, the City "intentionally condoned the policies and practices of Sheriff Louis Ackal and his staff" by contracting with Ackal for law enforcement services.[2]  The City argued the foregoing allegations fail to state a cause of action because the plaintiff (1) conflated "pattern" with a custom or practice; (2) failed to articulate the specific custom or practice of the City that led to the alleged pattern of unconstitutional conduct; and (3) failed to allege any custom, policy, or practice of the City that was the "moving force" behind the plaintiff's injury. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).  Thus, the City argued the plaintiff's allegations "[fell] well short of alleging that the City adopted a policy or participated in a widespread practice with deliberate indifference to its known consequences," or that the City's policy or custom was the moving force that caused a violation of the plaintiff's constitutional rights.  *Thomas v. City of N ew*

---

[2] *See* plaintiff's Complaint, ¶27.

3

*Orleans*, 883. F. Supp. 2d 669, 690 (E.D. La. 2012).

On October 2, 2017, the plaintiff amended his original Complaint for Damages [Doc. 13] with the permission of the Court. In his Amended Complaint, the plaintiff alleges "the custom of New Iberia is to enter into a contract with Sheriff Ackal and the Iberia Parish Sheriff's Office to retain their law enforcement services, including operation of the Iberia Parish Jail." The plaintiff further alleges:

> Between the date of the aforesaid 2008 election and the date of incident alleged in this suit, May 14, 2016, a significantly high number of constitutional and civil rights violations occurred on a regular basis between IPSO and the citizens of New Iberia that ultimately resulted in a federal criminal investigation and nearly a dozen IPSO deputies pleading guilty to a cavalcade of crimes in early 2016, before the incident that forms the basis of this lawsuit. Said federal investigation occurred over the course of several years and the City of New Iberia had actual and/or constructive knowledge of the contents of the investigation.[3]

The plaintiff goes on to assert that, despite the high number of investigations into the practices of the IPSO, the City remained "unfazed and continued to retain the services of Ackal and IPSO until May 2016, the date of the subject incident, and continuing on thereafter."[4] The plaintiff further alleges:

> In fact, it was the policy of the City of New Iberia to delegate the policymaking and procedures of IPSO, including the use of force continuum, to Sheriff Ackal, despite the fact that the law explicitly states

---

[3] *See* plaintiff's Amended Complaint, ¶54.

[4] *See* plaintiff's Amended Complaint, ¶58.

4

that said policymaking and procedures is the responsibility of the city itself. Furthermore, despite the rise in excessive force lawsuits and deaths, the City of New Iberia never chose to seize control over the policymaking and procedures of Sheriff Ackal, and continued to act deliberately indifferent to the persistent constitutional violations occurring within their city limits at all times relevant.[5]

In its supplemental memorandum in support of its motion to dismiss, the City argues the allegations added in the Amended Complaint do not cure the deficiencies noted in the original motion, and the City re-urges the motion to dismiss the claims against it on grounds the plaintiff fails to state a claim against the City.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

---

[5] *Id.* at ¶59.

5

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

## III. ANALYSIS

The issue before the undersigned is whether the plaintiff sufficiently states a claim for municipal liability under §1983 against the City of New Iberia based upon allegations that the City contracted with the Sheriff of Iberia Parish, whose department has been the source of numerous investigations of constitutional rights violations. The argument of the plaintiff appears to be that in continuing to contract with the IPSO, the City thereby became a *de facto* policy maker for the Sheriff, and consequently, the City is the actual policymaker of the policies that allegedly violated

6

the constitutional rights of the plaintiff.

The undersigned was unable to find cases directly addressing this precise issue, however, the City cites a case from the Eleventh Circuit that is instructive.  In *Grech v. Clayton County*, 335 F.3d 1326, 1329-30 (11th Cir. 2003), the court stated:

> The Supreme Court has placed strict limitations on municipal liability under §1983. A county's liability under §1983 may not be based on the doctrine of respondeat superior.  A county is "liable under section 1983 only for acts for which [the county] is actually responsible."  Indeed, a county is liable only when the county's "official policy" causes a constitutional violation.  Thus, [a plaintiff] must "identify a municipal 'policy' or 'custom' that caused [his] injury."
>
> A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county.  Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is "the 'moving force [behind] the constitutional violation.'  Under either avenue, a plaintiff (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue.

(internal citations omitted).

Here, the plaintiff does not allege a specific custom or practice of the City that violated the plaintiff's civil rights, but rather, alleges that the City's practice of contracting with the ISPO -- and continuing to contract with the IPSO in the face of

7

mounting investigations into civil rights violations against that department -- in essence constitutes a "city policy" that caused the constitutional violation at issue. In short, the plaintiff argues the City knew or should have known of the numerous investigations into the activities of the IPSO, and that by continuing to contract with the IPSO in spite of those investigations, the City became a policymaker for the Sheriff, and thereby enacted policies that caused the deprivation of the plaintiff's constitutional rights in this case.

As an initial matter, the undersigned notes the contractual arrangement between the City and the IPSO is legally recognized and sanctioned by La. Rev. Stat. §33:1324, which states in pertinent part:

> Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in the construction, acquisition or improvement of any public project or improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
>
> (1) Police, fire and health protection. . . .

Thus, the contractual relationship between the City and the IPSO is an arrangement that is recognized under Louisiana law. Here, the City of New Iberia,

8

situated within Iberia Parish, contracts with the Sheriff to provide law enforcement services in the City pursuant to La. Rev. Stat. §33:1324(1). The plaintiff does not allege that the City creates, sets, or implements law enforcement policies for the Sheriff. Rather, the plaintiff alleges that in contracting with the IPSO, and in continuing to contract with the IPSO despite the existence of several investigations within the Sheriff's department, the City has somehow tacitly condoned the policies of the IPSO and thereby become a policymaker for the IPSO.

The flaw in the plaintiff's argument is that the Sheriff is not an employee of the City, and the City does not implement policies for the IPSO. The two entities – the City and the IPSO – are separately functioning governmental entities. Here, the City contracted with the Sheriff for law enforcement services and defers to the Sheriff to discharge its obligations in accordance with the Sheriff's own policies. The plaintiff has failed to identify a municipal policy or custom that caused [his] injury, other than alleging that the City contracted with the IPSO for services, which, as the under-signed has explained, is an accepted and legal practice in the state of Louisiana. For this reason, the plaintiff cannot show that the City enacted a custom or practice that was "the 'moving force [behind] the constitutional violation' in question.

For the foregoing reasons, the undersigned concludes the plaintiff fails to sufficiently allege that the City of New Iberia had in place an "official policy" that

caused a constitutional violation, nor has the plaintiff identified a municipal 'policy' or 'custom' that caused [his] injury.  Consequently, the plaintiff fails to state a claim against the City under 42 U.S.C. 1983.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the a Motion to Dismiss for Failure to State a Claim [Doc. 8] filed by the City of New Iberia ("the City") be GRANTED, and the plaintiff's §1983 claims against the City be DENIED AND DISMISSED WITH PREJUDICE.

The City argues that if the claims against it are dismissed, the Court should decline to exercise supplemental jurisdiction over any pending state law claims. However, the record shows the plaintiff has also alleged §1983 claims against the Sheriff, and these claims remain pending at this time.  Consequently, federal subject matter jurisdiction remains in this matter following dismissal of the claims against the City.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the

time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 18th day of December, 2017.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**